THE ATTORNEY GENERAL, EX REL. GEORGE C. LAW-RENCE, V. DAVID TROMBLY.

*Elections—Vacancy in county office—Appointment by Governor— Constitutional law—Right of local self-government.*

1. Section 37 of article 4 of the Constitution, which provides that the Legislature may "declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this Constitution," refers to the *mode* of filling such vacancy, and not the *term* of the appointee.

2. Title to an elective office can only be conferred by the people by an election thereto, and it is only by and through an election that the people can act with respect to such an office; and title to an office for a specific term cannot be confirmed by a failure to elect.

3. No call for a special election to fill a vacancy in a county office is necessary where such vacancy is filled at a general spring election, at which State officers are elected.

4. Act No. 167, Laws of 1857 (How. Stat. § 667), which provides that, in case a vacancy in a county office is filled by appointment by the Governor, the appointee shall hold the office during the unexpired portion of the regular term limited to such office, unless the appointment is sooner revoked or determined by the Governor, is unconstitutional, in that it undertakes to deprive the electors of a county of their constitutional right to elect for such unexpired term.

*Quo warranto.* Argued November 13, 1891. Decided December 21, 1891.

Information in the nature of a *quo warranto* to test the right of respondent to hold the office of auditor of Wayne county. Demurrer sustained and information quashed. The facts are stated in the opinion.

*A. A. Ellis*, Attorney General *(Edwin F. Conely* and *Orla B. Taylor*, of counsel), for relator.

*William J. Gray (F. A. Baker*, of counsel), for respondent.

McGRATH, J. The relator files an information in the nature of a *quo warranto* to compel David Trombly, the respondent, to show by what warrant he holds the office of county auditor of Wayne county.

The information sets forth that respondent has usurped, intruded into, and unlawfully held and exercised, and still does usurp, etc., the said office; that—

"1. On July 27, 1889, and for some time prior thereto, the board of auditors of Wayne county, Mich., consisted of Albert Stoll, Charles P. Collins, and William C. Mahoney.

"2. On July 28, 1889, the said William C. Mahoney, while auditor as aforesaid, died, thereby creating a vacancy in said board of auditors.

"3. On August 3, 1889, Hon. Cyrus G. Luce, Governor of the State of Michigan, appointed the relator auditor for the county of Wayne, in the place of the said William C. Mahoney, deceased. The appointment was made under the authority of Act No. 272 of the Session Laws of 1873, which reads as follows:

"'SECTION 1. *The People of the State of Michigan enact*, that the Governor shall appoint a suitable person, being a resident of Wayne county, to fill any vacancy now existing or which may hereafter occur in the office of auditor of said Wayne county. The person so appointed, after having qualified, as now provided in case of persons elected to said office, shall immediately enter upon the performance of his duties as such auditor, and, as such, shall have all the powers and shall perform the duties authorized or required by law.'

"On August 6, 1889, the relator duly qualified as such

auditor, filed his regularly approved bond; and entered upon the discharge of the duties of said office. He continued to hold said office from thence to said 16th day of April, 1891, and since January 1, 1891, by authority of law and the vote of the board of auditors, was chairman of the board.

"5. The above named Charles P. Collins was elected auditor by the board of supervisors of the county of Wayne upon October 10, 1887, and entered upon the performance of his duties upon January 1, 1888, his term of office being for three years from that date, and until his successor should be elected and qualified. Upon November 4, 1890, Joseph Nagel was elected county auditor, as successor to Mr. Collins, but upon December 9, 1890, and before he had qualified for such office, Mr. Nagel died. Upon January 12, 1891, the Hon. Edwin B. Winans, Governor of the State of Michigan, assumed to appoint Henry J. A. Leteker to fill the supposed vacancy caused by the death of said Nagel. Mr. Leteker attempted to qualify and enter upon the discharge of the duties of his supposed office, but, upon certain *mandamus* proceedings in this Court, it was held that Mr. Leteker had not been lawfully appointed, and that said Collins was entitled to continue in such office until his successor was duly elected and qualified. The course of these proceedings and the result thereof appear in the records of this Court, to which the relator prays leave to refer. Mr. Collins continued to perform the duties of county auditor until April 16, 1891, when he relinquished his office, as hereinafter explained.

"6. On February 3, 1891, a written request to call a special meeting of the board of supervisors of said county, signed by 24 members of said board, was filed with William May, Esq., county clerk of said county. Thereupon the county clerk mailed to each member of the board a postal-card containing notice that said meeting would be held at the council chamber in the city hall, Detroit, on Monday, March 2, at 11 A. M., city time, 'for the purpose of ordering a special election to fill vacancy in the office of county auditor, and for such other business as may properly come before such board.' No other notice was given.

"7. Pursuant to this call, said board of supervisors met at said council chamber on Monday, March 2. Two sessions were held, during which 52 members of said

board were present at one session or the other. The remaining two members, Supervisors Lennane and Sullivan, received the notice aforesaid, but the former was out of the city, and the latter, by reason of sickness, was unable to be present. Said board passed a resolution ordering a special election of county auditors to fill vacancies caused by the death of Joseph Nagel and William C. Mahoney to take place upon April 6, A. D. 1891. Thirty-one (and no more) of the supervisors present voted in favor of said resolution, and 15 supervisors voted against the same. ·  ·

"8. Thereafter the Democratic party in said county held a convention, and placed in nomination Henry J. A. Leteker to fill the vacancy caused by the death of Joseph Nagel, as aforesaid, and David Trombly to fill the vacancy alleged to exist on account of the death of William C. Mahoney, as aforesaid. The Republican party held a convention, and placed in nomination Thomas Fairbairn for the vacancy caused by the death of Joseph Nagel, and made no other nomination. The Republican county committee were aware of the action of said board of supervisors in ordering an election for county auditor for the unexpired portion of the term ending December 31, A. D. 1891, but voted to make no nomination. The Prohibition party placed in nomination William H. Tracy for the vacancy caused by the death of Joseph Nagel, and made no other nomination.

"9. On April 6, 1891, an election throughout the State and county was held, at which time the election for county auditors was held. The candidates above named received votes as follows:

"For county auditor for unexpired portion of term ending December 31, 1893: Henry J. A. Leteker, 12,-626 votes; Thomas Fairbairn, 10,636 votes; William H. Tracy, 521 votes. For county auditor for unexpired portion of term ending December 31, 1891, David Trombly, 12,914 votes.

"The Democratic candidates for regents of the University of Michigan received in the county of Wayne votes as follows: Arthur M. Clark, 13,114 votes; Charles I. Williams, 12,913 votes. And the Republican candidates for regents received, respectively, Henry Howard, 10,010 votes; Peter M. Cook, 9,975 votes.

"10. On April 15, 1891, the board of canvassers of said county met and canvassed the vote, and certificates

of election were delivered to said Henry J. A. Leteker and said David Trombly.

"11. On April 16,. 1891, Mr. Leteker presented his certificate of election to. the board of auditors of Wayne county, and thereupon Mr. Collins vacated his office, and relinquished the same to Mr. Leteker, who has ever since acted as and performed the duties of county auditor for the term to which Mr. Nagel was elected, as above explained.

"12. On April 16, 1891, the relator, George C. Lawrence, as chairman of said board of auditors, called a meeting for 2 o'clock in the afternoon of said day, that being the usual time for holding meetings, to pass upon bills and accounts against the county of Wayne, and notified Auditors Holihan and Leteker of such meeting. At the time appointed Messrs. Leteker and Holihan were present, and the relator stated to them that he had a. number of important accounts which required auditing, and requested them to sit with him, and pass upon the same. But Messrs. Holihan and Leteker refused to recognize relator as chairman of said board of auditors, or as a member thereof, and then and there refused, and ever since have refused, to sit with said relator, and pass upon accounts presented to the board of auditors with him; and thereupon. Messrs. Holihan and Leteker assumed to and did recognize said David Trombly ·as a member of said board of auditors, in the place of the relator, and ever since have so recognized him, though the relator has never voluntarily vacated, surrendered, nor in any manner relinquished his said office of county auditor; and said David Trombly has ever since held, used, and exercised said office of county auditor of the county of Wayne, and exercised the rights, liberties, privileges, and franchises appertaining thereto.

"13. The relator has never in any manner voluntarily vacated, surrendered, or relinquished his said office, and he avers that he is a member of the board of auditors of the county of Wayne, and the chairman of said board, and that he is entitled ˇto hold said office and perform the duties thereof, as successor of William C. Mahoney, until the expiration of his term, to wit, December 31, 1891, under the authority of the following statute:

"'SECTION 1. *The People of the State of Michigan enact,* that whenever a vacancy shall occur in any county office, and such vacancy shall have been filled by appointment by the Governor,

such appointment shall continue, and the person so appointed shall hold said office, during the unexpired portion of the regular term limited to such office, unless the Governor shall sooner revoke and determine such appointment.'

" Which statute is Act No. 167 of the Session Laws of 1857, being section 667, How. Ann. Stat., and said statute has never been repealed, and is still in full force and virtue. The appointment of the relator has never been revoked or determined by the Governor of the State.

" And he further avers that said David Trombly is not a member of said board of auditors, for the reasons:

" 1. That no vacancy existed in the office to which said Trombly claims and pretends to have been elected.

" 2. That no sufficient notice of the holding of a, meeting of the board of supervisors to order a special election was given.

3. That said' election was not ordered by two-thirds. of the members present at said meeting of the board of supervisors.

" 4. That there was no authority of law for the election, of an auditor in the place of the relator in the manner and at the time attempted."

As to the question of notice, the objection that a special election could not be called without a two-thirds vote of the members elect of the board of supervisors is not tenable. The sixteenth subdivision of section 483. and section 484 of the Statutes have no application, for the power to order a special election is expressly given by section 141, and the necessary vote is prescribed by section 475.

In the present case, however, no call for a special election was necessary. Respondent was elected at the general spring election, at which State officers were elected.

The fact that, in the notices that were given of the election to elect auditors, the election was termed a " special" one, did not invalidate the notice, or affect the validity of an election under it.

The existence of an elective board of auditors for the

county of Wayne, known and recognized as "county officers," antedates the present Constitution, and is expressly recognized by that instrument. Relator claims by virtue of an appointment under the act of 1873, and insists that his term is fixed by the act of 1857. No question is raised as to the legality of his appointment, but respondent insists that the act of 1857 is unconstitutional, as abridging the right of local self-government; that the Governor's authority under the act of 1873 is limited by implication to provisional appointments; and that the electors of Wayne county had the right to fill the vacancy at the next or at any subsequent general election after such vacancy occurred. While the Constitution contains no express verbal restrictions upon the power of the Legislature to authorize the Governor to make permanent appointments to purely local offices, the principle of local self-government is so deeply imbedded in the ground-work of our system of government that no mere general grant of legislative power can be said to include the authority to take from the people the management of their local concerns, and all delegations of authority to the several departments of government must be deemed to have been made subject to this fundamental principle. This is but a restatement of the doctrine laid down by Justice COOLEY, after an able and exhaustive discussion of the question, participated in by all the members of the Court, in *People v. Hurlbut*, 24 Mich. 44. The soundness of the doctrine there laid down has not been since questioned, but has been recognized and approved in *Attorney General v. Lothrop*, 24 Mich. 235; *Hubbard v. Township Board*, 25 Id. 153; *Commissioners v. Common Council*, 28 Id. 228; *Attorney General v. Common Council*, 29 Id. 108; *Allor v. Auditors*, 43 Id. 76; *Attorney General v. Common Council*, 58 Id. 213; and *Lawrence v. Hanley*, 84 Id. 399. The act of 1857 is there-

fore invalid, as the Legislature cannot divest the people
of the county of Wayne of the right to select their own
officers in the usual manner.  Here Mahoney died during
the first year of his term, leaving an unexpired term of
nearly two and one-half years.  As was said by Justice
MORSE in *Lawrence v. Hanley:*

"It is the plain intention of all the statutes, taken
together, that this office shall be an elective one; and
the Governor is not authorized to fill it for a full term."

Section 37 of article 4 of the Constitution, which pro-
vides that the Legislature may determine the manner of
filling vacancies, must be construed as referring to the
mode of filling such vacancies, and not to the term of
the appointee; in other words, the construction of said
section must be consistent with the implied restrictions
upon legislative power hereinbefore referred to.  The act
of 1873 was a proper exercise of the power conferred
upon the Legislature by this section, but the act of 1857
exceeds the limits of that power, inasmuch as it under-
takes to deprive the electors of counties of their consti-
tutional right to elect for the unexpired term.

It is insisted, however, upon the part of the relator,
that, inasmuch as the electors of Wayne county did not,
at the intervening elections, exercise the right to elect,
the appointment of relator must be deemed to have been
fully ratified and confirmed; citing *Attorney General v.
Lothrop,* 24 Mich. 235.  In that case, however, the power
of appointment had been lodged in the council, and that
body had not only neglected to repudiate the appoint-
ments made, but accepted of them by confirming their
action.  Mr. Justice CAMPBELL says:

"But when the board communicated directly with the
council, and reported their action for adoption and con-
firmation, it became incumbent on the council to deter-
mine speedily whether to accept or to repudiate the
appointments.  They deliberately confirmed the action of

the commissioners, and, upon receiving a veto message from the mayor, they again confirmed it, by the increased majority made necessary by law to overrule his objections."

In the present case, assuming that the Governor had the power to make provisional appointments, the appointment of the relator, when made, was by authority. Relator was auditor *de jure* until the next general election occurring after the appointment. Title to an elective office can only be conferred by the people by an election thereto, and it is only by and through an election that the people can act with respect to an elective office. Title to an office for a specific term cannot be confirmed by a failure to elect. It would be absurd to say that a mere holding over by reason of failure to elect created a tenure for another term, or confirmed the title to the office for that term.

The demurrer must be sustained, and the information quashed.

The other Justices concurred.