STATE EX REL. MARTIN, Plaintiff, vs. EKERN, Defendant.

*May 31—September 13, 1938.*

646

For the plaintiff there was a brief by *Rubin, Zabel & Ruppa,* attorneys, and *Wm. B. Rubin* and *W. C. Zabel* of counsel, all of Milwaukee, and oral argument by *Mr. Rubin, Mr. Winfield C. Zabel,* and *Mr. John W. Zabel.*

For the defendant there was a brief by the *Attorney General, Ralph M. Hoyt,* and *Walter D. Corrigan, Sr.,* special counsel, attorneys for the State, and *Walter D. Corrigan, Sr.,* and *Ralph M. Hoyt,* both of Milwaukee, attorneys for Herman L. Ekern, and oral argument by *Mr. Hoyt, Mr. Corrigan,* and the *Attorney General.*

The following opinion was filed June 21, 1938:

NELSON, J. The first question for determination is whether this court should grant leave to the petitioner to

bring an original action in the name of the state of Wisconsin. Such leave is asked because the attorney general has refused to bring the action. The question which the petitioner seeks to have determined is most important and of great public concern and interest. Obviously the people of this state are vitally interested in seeing that no important office, such as that of lieutenant governor, be intruded into by any person who has not lawful authority to hold the office or to perform the duties thereof.

The office of governor is one of high dignity in which the people have a paramount interest, *Attorney General ex rel. Bashford v. Barstow,* 4 Wis. 567. The office of lieutenant governor is likewise of great importance because upon the incumbent thereof may at any time devolve the powers and duties of the governor. Sec. 7, art. V, Const. That the question sought to be determined is *publici juris* and is one which relates to "the sovereignty of the state, its franchises and prerogatives, or the liberties of its people," cannot be gainsaid. *Attorney General v. Railroad Companies,* 35 Wis. 425; *Attorney General v. Eau Claire,* 37 Wis. 400; *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164; *In re Exercise of Original Jurisdiction,* 201 Wis. 123, 229 N. W. 643.

Assuming for the moment that under the circumstances alleged, the petitioner is a proper person to bring the action in the name of the state, we think it clear, that under the rules stated in the four cases just cited, the petitioner properly invokes the original jurisdiction of this court. In a very early case the question: Why was original jurisdiction of these high prerogative writs given to the supreme court? was propounded and answered thus:

"Because these are the very armor of sovereignty. Because they are designed for the very purpose of protecting the sovereignty and its ordained officers from invasion or intrusion, and also to nerve its arm to protect its citizens in their liberties, and to guard its prerogatives and franchises

against usurpation. The convention might well apprehend that it would never do to dissipate and scatter these elements of the state sovereignty among five, ten, twenty or forty inferior tribunals, and wait their tardy progress through them to the supreme tribunal, upon whose decisions must finally depend their efficacy?" *Attorney General v. Blossom,* 1 Wis. *318, *330.

The petitioner asks leave to bring this action in behalf of the state, by virtue of the provisions of sec. 294.04, Stats., which so far as here material provides:

"(1) An action may be brought by the attorney general in the name of the state, upon his own information or upon the complaint of any private party, against the parties offending in the following cases:

"(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military. . . .

"(2) Such action may be brought in the name of the state by a private person on his own complaint when the attorney general refuses to act or when the office usurped pertains to a county, town, city, village or school district."

Sec. 294.04, Stats., was enacted by the legislature as sec. 336, of ch. 120, Laws of 1856, and as a part of our code. Ever since its enactment it has continued in force without amendment except that the word "school" was inserted before the word "district" in the last line thereof. Giving to the words and phrases of that statute a construction according to their common and approved usage, sec. 370.01 (1), Stats., it would seem that their meaning is so clear and unambiguous as not to require construction. That statute was construed by this court in 1875. In *State ex rel. Wood v. Baker,* 38 Wis. 71, 81, Mr. Chief Justice RYAN, speaking for the court, said:

"Sec. 6, ch. 160, R. S., relates to proceedings in the nature of *quo warranto* for usurpation of office; and authorizes the attorney general to bring an action in the name of the state

'upon his own information or upon the complaint of any private person.' Interpreted by the constitution and translated into legal phraseology, we take this to mean that, in such cases, the attorney general may file an information in the nature of *quo warranto, ex officio* or upon the relation of a private person. The word 'complaint' cannot mean a pleading so called in the code, but seems to be used in a general sense, as a substitute for relation; and the attorney general certainly proceeds *ex officio* when he acts on his own information only. So far, therefore, we see no material change in the law. The section, however, goes on to provide that such an action may be brought 'in the name of the state, by a private person, on his own complaint, when the attorney general refuses to act, or when the office usurped pertains to a county, town, city or district.' Before such a statute, the courts of the state might perhaps, in proper cases, have authorized proceedings in the name of the attorney general, if that officer wrongfully refused to act, and it was necessary to proceed in his name. *Attorney General v. Barstow,* 4 Wis. 567. Be that as it may, this branch of the section gives a new proceeding by private parties, in the name of the state, without use of the attorney general's name or office, in cases of local office, and in all cases in which that officer may refuse to act. This proceeding is plainly in the nature of a civil action, although in the name of the state. 3 Black. Com. 263."

That the construction given to that statute at that time was the only one that reasonably could be given to it seems clear. However, the respondent contends that the words "a private citizen" do not mean any private citizen but only a private person who is entitled to the office. That contention is based upon the holding of this court in *State ex rel. Heim v. Williams,* 114 Wis. 402, 405, 90 N. W. 452. Mr. Justice Dodge, speaking for the court in that case, in respect to the right of the relator there to maintain the action, and in respect to sec. 3466, Stats. 1898 (now sec. 294.04), said:

"But our statute has recognized or created an additional province for such a suit by providing (sec. 3466, Stats.

1898) : 'Such action may be brought in the name of the state by a private person on his own complaint when the attorney general refuses to act.' Under that statute it has been provided (sec. 3463) that the proceeding is by 'civil action,' thus making it subject to sec. 2605 : 'Every action must be prosecuted in the name of the real party in interest;' or, to transpose the idea, that a party, in order to prosecute, must have a real interest in the object to be accomplished. *State ex rel. Peacock v. Orvis,* 20 Wis. 235 ; *State ex rel. Chase v. McKinney,* 25 Wis. 416; *State ex rel. Wood v. Baker,* 38 Wis. 71, 81; *State ex rel. Attorney General v. Cunningham,* 81 Wis. 440, 471, 487, 51 N. W. 724; *State ex rel. Glenn v. Stein,* 13 Neb. 529, 14 N. W. 481; *Attorney General ex rel. Lawrence v. Trombly,* 89 Mich. 50, 58, 50 N. W. 744. The relator, though using the name of the state to sue, neither alleges nor claims any but a private interest. He does not assume to champion the rights of the public, which would be presented were the attorney general here present on behalf of the state, but predicates his right to sue wholly upon his title to the office. If he has not such title, then he has no interest in a judgment ousting the respondent from the office, save such as is common to all citizens or members of the community. That title is denied, and therefore becomes the first subject for inquiry and decision."

That language apparently has remained unchallenged up to the present time, probably for the reason that no similar action has been brought. Only twice has that case been referred to. *State ex rel. Harley v. Lindemann,* 132 Wis. 47, 50, 111 N. W. 214, and *State ex rel. Kleist v. Donald,* 164 Wis. 545, 160 N. W. 1067. In the first case mentioned, it was cited to the proposition that "there can be no question but that the offices alleged to have been usurped are public offices and pertain to the city of Milwaukee and the public schools therein, within the meaning of the statute quoted. Upon the facts thus admitted it is well settled that the relator may rightfully maintain this action in the name of the state." In the second case mentioned, it was cited in connec-

tion with a contention of the relator which was not considered sound.

In *State ex rel. Heim v. Williams, supra,* the cause of action which the relator asserted was so obviously without merit that the court may have failed to consider the full implications of the language used. The court no doubt intended by the following language: "The relator, though using the name of the state to sue, neither alleges nor claims any but a private interest. He does not assume to champion the rights of the public, which would be presented were the attorney general here present on behalf of the state, but predicates his right to sue wholly upon his title to the office," strictly to base its holding on the allegations of the complaint. An examination of the complaints, original and amended (Vol. 695, Cases and Briefs), reveals that the relator there in bringing the action had only one purpose in mind and that was to obtain the office for himself. This court gave no thought or consideration in that case to the proposition that a vindication of a public right was also involved. In *Income Tax Cases, supra,* this court, in speaking of the original jurisdiction of this court, said (p. 500):

"This transcendant jurisdiction is a jurisdiction reserved for the use of the state itself when it appears to be necessary to vindicate or protect its prerogatives or franchises or the liberties of its people; the state uses it to punish or prevent wrongs to itself or to the whole people; *the state is always the plaintiff and the only plaintiff,* whether the action be brought by the attorney general, or, against his consent, on the relation of a private individual under the permission and direction of the court. *It is never the private relator's suit; he is a mere incident;* he brings the public injury to the attention of the court, and the court, by virtue of the power granted by the constitution, commands that the suit be brought by and for the state. The private relator may have a private interest which may be extinguished (if it be severable from the public interest), yet still the state's action pro-

ceeds to vindicate the public right. The fact that in many cases, as for example cases of unlawful imprisonment, the private wrong and the public wrong are so closely identified that the ending of the private wrong necessarily puts an end to the public wrong makes no difference with the principle."

What the court there said is, in our view, clearly correct, and is particularly applicable here where the petitioner seeks to vindicate no private right but only the public right to have its offices filled and held only by those who are legally elected or appointed thereto, and to have the powers and duties thereof exercised and performed only by those entitled to such offices. While it is not specifically stated in the petition that leave is asked to bring the action for the purpose of vindicating a public right, that is obviously the primary and only purpose of the action which the petitioner asks leave to bring. So construing the petition, as we think it clearly must be construed, we have a petition in which a private person, a citizen, elector, and taxpayer of this state asks leave to bring an action in the name of the state for the purpose of vindicating a public, not a private right, upon the refusal of the attorney general to bring it. In a situation like this, where an appointment has been made to fill a vacancy in office, there never can be a petitioner or relator who has any claim or title to such office. Unless a citizen, upon the refusal of the attorney general to bring the action, can obtain leave to bring an action in the name of the state to determine whether such appointment is lawful, then the lawfulness of the appointment will never be determined and the alleged wrongful usurpation or unlawful intrusion into the office cannot be questioned. Let us assume that a lieutenant governor tenders his resignation to the legislature, as he is required to do if the legislature is in session, sec. 17.01 (1), Stats.; that the legislature then proceeds by joint resolution, without authority of law, to make an appointment to fill the vacancy; and that the attorney general, upon request of a

private person, refuses to bring an action to determine whether such appointee is the lieutenant governor of this state, or a usurper and intruder into such office. Could it be argued that leave should not be granted to a private person to bring an action in the name of the state for the purpose of determining whether such lieutenant governor so elected or appointed is a *de jure* officer or a mere usurper? We think not. Similar examples readily suggest themselves. Without further discussion, we are of the opinion that the prayer of the petition for leave to bring the action should be granted.

The conclusion of the court that leave to bring the action should be granted renders the stipulation made at our bar, and heretofore mentioned, effective. The petition, from now on, will be considered as a complaint to which the respondent has demurred. The petitioner will now be referred to as the "relator" and the respondent as the "defendant."

So many of the allegations of the complaint as are material may be summarized as follows: Philip F. La Follette was elected governor of the state of Wisconsin on November 3, 1936, and Henry A. Gunderson was elected lieutenant governor of this state at the same time. Both Philip F. La Follette and Henry A. Gunderson, on January 4, 1937, took their oaths of office as governor and lieutenant governor, respectively. Philip F. La Follette, at all times since January 4, 1937, has been the governor of this state. On October 16, 1937, Henry A. Gunderson resigned as lieutenant governor. On May 16, 1938, Philip F. La Follette, as governor, appointed the defendant, Herman L. Ekern, to the office of lieutenant governor. Herman L. Ekern, on May 17, 1938, took the prescribed oath of office, assumed the duties of the office, and ever since has exercised the functions thereof.

The relator asserts that Philip F. La Follette, as governor of this state, was without legal authority to appoint the defendant to the office of lieutenant governor, and that the defendant has ever since his appointment and qualification usurped and intruded into the office of lieutenant governor.

The sole question for decision is whether the governor of this state, under the constitution and laws passed in pursuance thereof, has the authority to appoint one having the required qualifications to the office of lieutenant governor. The controversy which has arisen requires a reference to and a construction of the following provisions of our constitution and laws which concededly are applicable.

Sec. 1, art. V. "The executive power shall be vested in a governor, who shall hold his office for two years; a lieutenant governor shall be elected at the same time, and for the same term."

Sec. 2, art. V. "No person except a citizen of the United States and a qualified elector of the state shall be eligible to the office of governor or lieutenant governor."

Sec. 7, art. V. "In case of the impeachment of the governor, or his removal from office, death, inability from mental or physical disease, resignation, or absence from the state, the powers and duties of the office shall devolve upon the lieutenant governor for the residue of the term or until the governor, absent or impeached, shall have returned, or the disability shall cease. . . ."

.Sec. 8, art. V. "The lieutenant governor shall be president of the senate, but shall have only a casting vote therein. If, during a vacancy in the office of governor, the lieutenant governor shall be impeached, displaced, resign, die, or from mental or physical disease become incapable of performing the duties of his office, or be absent from the state, the secretary of state shall act as governor until the vacancy shall be filled or the disability shall cease."

Sec. 9, art. XIII. "All county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties, or appointed by the boards of supervisors, or other county

authorities, as the legislature shall direct. All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people or appointed, as the legislature may direct."

Sec. 10, art. XIII. "The legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this constitution."

Sec. 17.27 (4), Stats. *"Any other vacancy.* In case of a vacancy in any office in the state where no other provision is made for filling the same, it shall be filled by appointment by the governor."

It is conceded that there is no provision in our constitution or laws which *specifically* provides for the filling of a vacancy in the office of lieutenant governor.

The relator contends that under our constitution there can never be a vacancy in the office of lieutenant governor because sec. 8, art. V, provides that "if, during a vacancy in the office of governor, the lieutenant governor shall be impeached, displaced, resign, die, or from mental or physical disease become incapable of performing the duties of his office or be absent from the state, the secretary of state shall act as governor until the vacancy shall be filled or the disability shall cease," and because that provision of the constitution prevents a vacancy in the office of lieutenant governor. The contention, in our opinion, is not sound. That Henry A. Gunderson resigned as lieutenant governor is alleged in the complaint. That since he resigned he has not been lieutenant governor is conceded. That there was a vacancy in the office of lieutenant governor from October 18,

1937, to May 16, 1938, seems so clear as to require no discussion. The term "vacancy" as applied to an office has no technical meaning. In *State ex rel. Lamey v. Mitchell,* 97 Mont. 252, 257, 34 Pac. (2d) 369; it was said:

" 'The word "vacancy" as applied to an office, has no technical meaning. An office is not vacant so long as it is supplied, in the manner provided by the constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event.' " See also *State ex rel. Murphy v. McBride,* 29 Wash. 335, 70 Pac. 25.

But it is argued that there can be no vacancy in an office when there is a person who is qualified and authorized to perform the duties thereof. Citing *State ex rel. Lamey v. Mitchell, supra,* a case in which alleged vacancies in the offices of governor and lieutenant governor were considered.

The provision: "If, during a vacancy in the office of governor, the lieutenant governor shall be impeached, displaced, resign, die, or from mental or physical disease become incapable of performing the duties of his office, or be absent from the state, the secretary of state shall act as governor until the vacancy shall be filled or the disability shall cease," clearly recognizes, (1) that there may be a vacancy in the office of lieutenant governor as a result of impeachment, displacement, resignation, death, or mental or physical disease, which renders him incapable of performing the duties of his office, or as a result of his absence from the state, but not as a result of the powers and duties of the office of governor devolving upon him, and (2) that upon the happening of any of those contingencies, during a vacancy in the office of governor, the secretary of state shall act as governor until the vacancy shall be filled or the disability shall cease. The

phrase, "or the disability shall cease," may be referable either to the disability of the governor or the lieutenant governor, and the phrase, "until the vacancy shall be filled," may likewise be referable to a vacancy in the office of governor or to a vacancy in the office of lieutenant governor, which occurs "during a vacancy in the office of governor."

When a vacancy, either permanent or temporary, occurs in the office of governor, the powers and duties of that office devolve upon the lieutenant governor for the residue of the term or until the governor, absent or impeached, shall have returned or the disability shall cease. It is clear that the lieutenant governor does not become governor. He remains lieutenant governor, upon whom devolves the powers and duties of governor. In such a contingency no vacancy occurs in the office of lieutenant governor. *State ex rel. Lamey v. Mitchell, supra; State ex rel. Hardin v. Sadler,* 23 Nev. 356, 47 Pac. 450; *People ex rel. Lynch v. Budd,* 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46. It is likewise clear that if, during a vacancy in the office of governor, a vacancy occurs in the office of lieutenant governor, the secretary of state shall act as governor. He does not become either governor or lieutenant governor. He does not perform the duties of lieutenant governor except as he acts as governor. He does not cease to be secretary of state. Under our constitution the secretary of state can act as governor only when there occurs, during a vacancy in the office of governor, a vacancy also in the office of lieutenant governor. To hold otherwise would amount to judicially changing the language of our constitution. It is our opinion that the office of lieutenant governor unquestionably became vacant upon the resignation of Mr. Gunderson which vacancy could be filled, if there be authority under the constitution and laws to fill it by appointment. Sec. 10, art. XIII, Const., provides that "the legislature may declare the cases in which

any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this constitution." As hereinbefore stated, no provision is made in our constitution for the filling of a vacancy in the office of lieutenant governor. It is conceded that prior to the enactment of sec. 6, ch. 422, Laws of 1921, there was no law which authorized the filling of a vacancy in the office of lieutenant governor. Sec. 17.27 (4), Stats., was enacted in 1921, upon the advice of the revisor of statutes. In submitting the bill which contained the following language which the legislature subsequently enacted into law:

"A new subsection is added to section 17.27 of the statutes to read:

"(17.27) (4) *Any other vacancy.* In case of a vacancy in any office in the state where no other provision is made for filling the same, it shall be filled by appointment by the governor," the revisor appended the following:

"Note: This is a blanket provision to take care of any omission in the laws for filling vacancies."

It is contended by the relator that in construing sec. 17.27 (4), Stats., the court should apply the rule that specific provisions of a statute should prevail over general provisions upon the same subject. *Degutes v. State,* 189 Wis. 435, 207 N. W. 948; *Wisconsin Gas & E. Co. v. Fort Atkinson,* 193 Wis. 232, 213 N. W. 873. The rule in our opinion is not applicable because there is no specific provision in our constitution or laws relating to the filling of a vacancy in the office of lieutenant governor, and consequently there is no conflict between a specific law and a general law.

The relator further contends that in construing this statute we should apply, as an aid to construction, the doctrine of *noscitur a sociis.* It is pointed out that while the statute was enacted by the legislature as a new subsection it was numbered sec. 17.27 (4), and that its application should

therefore be restricted to the vacancies mentioned in subs. (1), (2), and (3) of sec. 17.27. See *Boardman v. State,* 203 Wis. 173, 233 N. W. 556; *Milwaukee v. Kassen,* 203 Wis. 383, 234 N. W. 352; *Fox v. Milwaukee Mechanics' Ins. Co.* 210 Wis. 213, 246 N. W. 511. The contention might have some merit had sub. (4) been adopted at the same time that subs. (1), (2), and (3), were enacted. Sub. (4), clearly, was denominated by the revisor as "a blanket provision to take care of any omission in the laws for filling vacancies." That is quite significant. Sub. (4) is clear and unambiguous. It is all inclusive. It authorizes the governor to fill a vacancy in any office in the state where no other provision is made for filling the same. Its plain provisions are broad enough to include an appointment to the office of lieutenant governor when a vacancy exists in that office. We cannot give to it a construction which would except from its provisions a vacancy in the office of lieutenant governor.

Nor can we say that the construction, which in our opinion, must be given to sub. (4), is so violative of the spirit of our constitution and the fundamental concepts therein expressed, as to impel a holding that the legislature never intended to authorize the governor to appoint a lieutenant governor when a vacancy occurs in that office. It is therefore our conclusion that the governor was authorized to appoint Herman L. Ekern to the office of lieutenant governor, which became vacant upon the resignation of Henry A. Gunderson and that therefore the complaint does not state a cause of action.

*By the Court.*—The demurrer to the complaint is sustained.

A motion for a rehearing was denied, without costs, on September 13, 1938.