STATE EX REL. BRISTER, Respondent, vs. WESTON and another, Appellants.

*November 11—December 8, 1942.*

*L. E. Vaudreuil* of Kenosha, for the appellants.

For the respondent there was a brief by *Hammond & Jones*, attorneys, and *Roy S. Stephenson* of counsel, all of Kenosha, and oral argument by *Mr. Walter W. Hammond* and *Mr. Stephenson*.

Briefs *amici curiæ* were filed by *Arthur Garfield Hays* of New York, N. Y., *Zarah Williamson* of New York, N. Y., and *Perry J. Stearns* of Milwaukee, attorneys for the American Civil Liberties Union, Inc., and by *Padway & Goldberg* of Milwaukee, attorneys for the Wisconsin State Federation of Labor.

ROSENBERRY, C. J. This action was begun under sec. 294.04, Stats., which provides:

"(1) An action may be brought by the attorney general in the name of the state, upon his own information or upon the complaint of any private party, against the parties offending in the following cases: (a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state; or (b) . . . (c) . . .

"(2) Such action may be brought in the name of the state by a private person on his own complaint when the attorney general refuses to act or when the office usurped pertains to a county, town, city, village or school district."

While much evidentiary matter is stated in the complaint, the substance of the complaint is that the defendants in the discharge of their official duties subjected themselves to the direction and control of an organization known as the Union League of Voters; that

"for the purpose of securing and maintaining its domination and control of members of the said board of education, the

said Union League of Voters has sought to exact from candidates for that office [members of school board] seeking its support in elections of members of the said board in Kenosha, a pledge and agreement that such candidates, when members of the said board, would (1) abide by the principles of the American Labor Movement, (2) abide by the principles of the Local Labor Movement and the policies established by the Local Labor Movement in the city of Kenosha as enunciated by the said Union League of Voters, and (3) any such candidates, when members of the said board, would abide by and vote according to the opinion of the majority of the members on said board who had taken the same pledge, after having discussed such issue among themselves."

It further appears that there are seven members of the school board, four of whom are associated with the so-called labor group; that each of the defendants has taken the pledge and made such agreement and is complying therewith.

"By so doing and because of so doing, each of the said defendants is not supporting the constitution of the United States and the constitution of the state of Wisconsin, and the principles and requirements of representative government established thereby, and is not faithfully performing his duties as a member of the said board of education."

"The result of such pledge and agreement by each of the said defendants is *that each of them has disqualified himself as a member of said board of education,* does not meet and comply with the constitutional and statutory qualifications and requirements to hold membership in said board and act as members thereof, is disqualified to hold such membership and act as a member of said board."

That as a consequence the actions of said board are illegal, a number of such actions being specified with particularity. It further appears that the board of education was about to act and award contracts with teachers and administrators in the schools for the coming year. An injunction was asked and the prayer for relief is as follows:

"The plaintiff demands judgment that the defendants be enjoined and restrained during the pendency of this action

from acting as and exercising any of the functions of the office of members of the board of education of the city of Kenosha, and be adjudged guilty of usurping, intruding into and unlawfully holding said offices as members of the said board of education, and each of them be excluded and removed from the same and the privileges and franchises thereof;" and that a fine be imposed as provided by law.

The defendants demurred to the complaint on the ground that it appeared from the face thereof that the court had no jurisdiction of the subject of the action, and for the further reason that it appears upon the face of the complaint that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled; the defendants answered making certain admissions and denials and setting out considerable evidentiary matter in reply to the complaint. There was a trial and the jury found that each of the defendants did not at all times exercise his own individual judgment and discretion in the performance of his duties as a member of the school board. Judgment was thereupon entered ousting the defendants from their respective offices, and the defendants were severally enjoined and restrained from acting as members of the school board during the respective terms for which they were elected.

Upon this appeal the defendants seek a review of the order overruling the demurrer to the complaint. (Sec. 274.34, Stats.) The contentions made by the defendants upon this branch of the case require us to consider the nature of the action *quo warranto,* as defined by ch. 294, Stats. Sec. 294.01 provides:

"The remedies heretofore obtainable by writs of *scire facias* and *quo warranto* and by proceeding by information in the nature of *quo warranto* may be obtained by civil action, and it shall not be necessary to sue out such writs in form," etc.

Sec. 294.04, Stats., a part of which has already been quoted, prescribes when an action may be brought. Upon the oral

argument it was conceded that the defendants did not usurp, intrude into, or unlawfully hold the office of member of the school board. No claim is made that the election was invalid in any respect whatever or that the defendants failed to qualify or that their office was vacant for any other reason than in the manner specified, that is, that each of the defendants had failed to exercise his own individual judgment and discretion in the performance of his duties as a member of the school board. No statutory provision is pointed out which provides that the failure of an officer to exercise his own individual judgment and discretion in the performance of his duties shall work a forfeiture of his office and no such statutory provision exists. The argument is that such conduct constitutes cause for removal on the ground that an officer guilty of such conduct unlawfully exercises his office within the meaning of sec. 294.04 (1) (a). We are unable to find any case construing this section which holds that the section authorizes an action to be brought against a public officer for his removal from office. The relators cite four cases. They are as follows: *Attorney General ex rel. Bashford v. Barstow* (1855), 4 Wis. 567. This was an original action in this court but was an action to try title to the office of governor of the state, and the judgment rendered ousted the respondent and adjudged the relator to be entitled to the office. This proceeding was clearly within the statute.

The next case is *State ex rel. Harley v. Lindemann* (1907), 132 Wis. 47, 111 N. W. 214, and was an action to oust certain persons assuming to act as a board of school directors on the ground that the law under which they were chosen was unconstitutional. So far as we are able to discover it has no bearing upon the question under consideration. If the law under which the members of the board held was unconstitutional, they had no title to the office.

The third case is *State ex rel. La Follette v. Kohler* (1930), 200 Wis. 518, 228 N. W. 895. The proceeding in that case

was under ch. 12, Stats., relating to corrupt practices. Sec. 12.24 provided that if the court should find that a candidate had violated the act—

"judgment shall be entered declaring void the election of such candidate to the office for which he was a candidate, and ousting and excluding him from such office and declaring the office vacant."

It was distinctly held in that case that the statute did not provide for removal from office. If the court finds that the candidate violated the corrupt practices act he gets no title to the office.

*State ex rel. Martin v. Ekern* (1938), 228 Wis. 645, 280 N. W. 393, was a case involving the validity of an appointment to office. In that case if the appointment was invalid the person in possession of the office had no title. The question for decision was whether he had title.

These cases are clearly within the provisions of the statute, but they do not even by analogy deal with the matter of removal from office which is an entirely different matter than an inquiry as to title to office. Cases cited from other jurisdictions are not particularly helpful inasmuch as the statutory provisions are often widely different, and we shall not for that reason take time to analyze cases from other jurisdictions.

In considering this question we must bear in mind that the question of whether or not a person has title to an office is a judicial question, while removal from office is a function of the executive department. *Opinion of Justices* (1938), 300 Mass. 596, 14 N. E. (2d) 465, 118 A. L. R. 166–169. Courts may be vested with power to remove officers whose duties are intimately associated with judicial process such as sheriffs, clerks, jailers, criers, etc. With that exception the supreme judicial court of Massachusetts held that the legislature could not constitutionally confer the power of removal upon courts. *Opinion of Justices, supra,* 118 A. L. R. 170. See note 118

A. L. R. 176, and cases cited. By the provisions of ch. 17, Stats., the legislature has set up a complete scheme for the removal of officers, other than constitutional officers, including members of a school board.

Relator contends that this chapter applies only to offices created after the time of its adoption. Sec. 17.29, Stats., provides:

"The provisions of this chapter supersede all contrary provisions in either the general law or in special acts, except the provisions of chapters 6 and 10 of the statutes relating to election officers appointed for the election precincts or polling places in the state; the provisions of chapter 21 of the statutes relating to the military staff of the governor and to officers of the Wisconsin national guard; and the provisions of chapter 22 of the statutes relating to officers of the Wisconsin naval militia; *and shall govern in the case of all offices hereafter created,* either by general law or special act, unless otherwise specially provided."

It is manifest from a reading of this section that if the last clause "and shall govern in the case of all offices," etc., had been omitted, the section would have made the chapter applicable to all then existing offices. The last clause was inserted out of abundant caution to make it clear that the chapter would apply to offices thereafter created as well as those then in existence. It certainly did not limit the application of the chapter to offices thereafter created. There can be no doubt that the respondents were subject to removal under this chapter. Being elective officers the respondents could be removed by recall (sec. 17.12 (1) (a), Stats.), so that the relator had an effective remedy under the provisions of ch. 17. Because the removal of officers was originally and exclusively an executive function and not a judicial function, courts have no inherent power of removal. *Opinion of Justices, supra; Driscoll v. Mayor of Sommerville* (1913), 213 Mass. 493, 100 N. E. 640. However, courts may review proceedings resulting in removal from office to ascertain whether they were in

good faith and were in accordance with the provisions of the statute under which the proceedings were taken. No doubt a court might, where a statute so provided, ascertain whether the facts are such as would create a forfeiture of the office as declared by the legislature.

"The courts are without authority to create and declare a forfeiture of office. Absent forfeiture at common law, the forfeiture can be created and declared only by either constitution or valid legislative enactments." *State ex inf. McKittrick v. Wymore* (1938), 343 Mo. 98, 106, 119 S. W. (2d) 941, 119 A. L. R. 710.

This case was cited by the respondent to the proposition that *quo warranto* may be used to remove an officer for misconduct in office. The proceedings in that case were under a statute which provided that when any person elected or appointed to any county, city, town, or township office in this state, except such officers as may be subject to removal by impeachment, who shall fail to devote his time to the duties of his office, etc., shall thereby forfeit his office and may be removed therefrom in the manner hereinafter provided. In that case the forfeiture was not declared by the court but by the legislature. Other cases cited by the respondent are in the same category.

There are two insuperable barriers to the maintenance of this action by the relator: (1) The respondents having unquestionable title to their office, they do not unlawfully "exercise their office." The term "unlawfully hold or exercise any public office" does not refer to acts of the holder of the office in the discharge of his duties. These words refer to his right to act as an officer. Therefore the facts in this case do not bring it within the provisions of sec. 294.04, Stats., and the action of *quo warranto* does not lie. (2) The legislature has made no provision for the removal of respondents from their office except those provided in ch. 17, Stats. The respondents being elective officers, they may be removed only by recall as

provided in sec. 17.12 in the absence of a statute declaring the offices forfeited by reason of misconduct in office. Sec. 17.03 declares upon what contingencies a public office becomes vacant. Misconduct in office does not create a vacancy. The demurrer to the petition should have been sustained.

The relator complains quite bitterly of the fact that the surrender of the individual judgment of respondents to the group of which they are members is contrary to the fundamental principles of democratic government; that to permit an administrative body to be governed by a group having no legal connection with it is a wrong and constitutes a violation of their oath of office. We shall not enter upon any discussion of the merits of this controversy. It is perfectly clear that, if the respondents failed at all times to exercise their own individual judgment and discretion in the performance of their duties, the remedy of the relator was political and not judicial. It may not be out of place to remark that charges of unfaithfulness and failure to faithfully discharge the duties of office are more often leveled at those who fail to keep their pre-election pledges than at those who keep them.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to dismiss the complaint.